## CIRCUIT COURT NO. 2 OF BALTIMORE CITY

Filed July 27, 1891.

JOHN C. O'NEILL, ET AL.,

VS.

PROGRESSIVE ENDOWMENT LEAGUE.

*Messrs. John P. Poe* and *Otto H. Droege* for complainants.

*Ex-Governor Wm. Pinkney Whyte, Col. Albert Ritchie, Richard M. Duvall, Esq.*, for respondents.

DENNIS, J.—

This bill is filed to restrain the defendant company from carrying on its business as at present conducted, for the oppointment of a receiver to take charge of its assets with a view to their equitable distribution among its members according to the proportion in which each has paid in.

"The original plaintiffs were seven in number, the total net amount paid by them to the association amounting to less than $120. The entire membership consists of about eight thousand, whose total contributions have amounted to over $150,000. Since the bill was filed forty other certificate holders have asked to be allowed to join as plaintiffs, while protests against the relief asked have been filed by 4,200 of such holders. The bill is sought to be maintained mainly upon the following grounds:

First, of the insolvency of the company.

Second, because the plaintiffs were induced to become members by false and fraudulent representations.

Third, the impracticability of the scheme.

Fourth, because by its charter the company was organized as a 'benevolent and beneficial' association, under Section 14, Class 1, Article 23, of the Code, and its methods of business are not of that character, hence its actions are *ultra vires* and void, and the further prosecution of its business should be restrained, and the money already collected under its illegal methods should be treated as held in trust for those from whom it was exacted."

I will consider these several grounds in the *order stated.*

First—*Insolvency, a stockholder* cannot file a bill for the appointment of a receiver upon the *sole ground* of the *insolvency* of a corporation. Proceedings must be had as provided for in Art. 23, Sec. 264 *et seq,* of the Code. See the case of Merryman vs. Carroll Brick Co., Circuit Court of Baltimore City.

Second—The alleged misrepresentation. There has been no proof of any misrepresentations sufficient to avoid the contract. The *prospectus* contained a statement that it was "estimated" that fifteen annual assessments would be sufficient to enable the company to pay the holder of each maturing certificate $100 at the end of the year, but nowhere was it stated that the company limited its right to call assessments to that number, and its constitution and the certificate of membership both contained provisions authorizing any number of assessments that might be necessary, which fact must, therefore, have been known to the plaintiffs and to all who joined the association, and no one of the plaintiffs has come forward to deny such knowledge. Beyond this statement of the prospectus, and somewhat similar statements in one or two numbers of the official newspaper of the company, there has been no attempt to prove misrepresentations as inducing to the contract.

Third—The *impracticability* of the scheme to this, two answers may be made. *First,* if the scheme or plan of the association as conducted was *authorized by the charter* of the company, then in the absence of fraud on the part of its officers or a misuse of the powers conferred, a Court of Equity has no power to interfere. A *legally authorized* business is beyond its control, and the State, which granted the charter, can alone correct the evils which may result from the exercise of the powers conferred.

*Second*—If the plan should prove to be impracticable, as it is argued, must be the inevitable result, still it is the *same plan* to which the plaintiffs assented and in which they joined deliberately and with their eyes open. They were not induced to join by fraud or misrepresentations; they became members with full knowledge of the workings and methods of business of

the association, and nothing has since occurred to increase its impracticability. The fact that they now realize they will not be able to make as much money out of it as they expected when they joined, or may even be losers, furnishes no ground for relieving them from their own voluntary action. A Court of Equity will not grant relief from a foolish and improvident speculative contract, against which the exercise of a very little common sense would have guarded, where no fraud has been practiced or false representations used as an inducement to its being entered into.

If it be conceded that this association is not of that character and hence is not working within the limits of its charter, the question arises are these plaintiffs in a position to ask the relief prayed for because of that fact. I think not.

Even if the plan of business of the association is not strictly in accordance with its charter, nevertheless it is *the plan* upon which the association has conducted its workings from the beginning of its existence. It was the plan in contemplation when the charter was obtained and was intended to be covered by its terms.

It was the plan in operation when the *plaintiffs became members*, and it is indisputable that they became members with reference to and in the hope of profiting by, the very methods of business of which they now complain. They voluntarily, with full knowledge and with open eyes and without being deceived, became participants in and promoters of the scheme, lending their aid to its advancement and success, and pledging their active exertions to secure an increase in its membership—performing the duties imposed upon them, and remaining quiescent for months under what they now allege were illegal exactions, in the hope of realizing extravagant profits, which must necessarily have been earned at the expense of less fortunate members, and now that they have concluded that these expectations are not likely to be realized, they asked this Court to condemn the whole scheme of the society as illegal from the beginning and to declare void, methods of business in which they were active participants with full knowledge of its character.

Such suitors are not entitled to the aid of a Court of Equity. Moreover, if the injunction asked for should be granted and a receiver appointed to take charge of and distribute the entire assets of the society, this action by the Court would amount *practically* to an *absolute dissolution* of the corporation and a *forfeiture* of its *charter*. *Technically*, it might not be so, the bald charter might, technically, still continue to exist but the active life of the society would be wholly destroyed. The injunction is directed against its whole method of business, and not a single detail of it could be exercised if the injunction was granted, so that *practically* it would kill the concern and leave its affairs to be wound up by this Court as a defunct corporation, as much so as if its charter had been forfeited by the proper action on the part of the State.

Now, it is undisputed law that a charter cannot be forfeited by a Court of Equity at the instance of a stockholder. The State grants the charter and the State alone can take it away; and the Code provides the manner in which it shall be done. Section 255 of Article 23 provides that the Governor may authorize the Attorney-General or the State's Attorney to institute proceedings for the forfeiture of the charter of a corporation for the abuse or misuse of its powers, and directs, if the corporation has been incorporated in this city, that the petition shall be filed in the Superior Court; and Section 263 authorizes the Governor, *upon the application, in writing, of any citizen*, to direct the Attorney-General or State's Attorney to file a bill in this Court, in the name of the State, for the purpose of restraining any corporation from assuming or exercising any powers or franchises not allowed by its charter. In each case the right to proceed is retained by the State, and the suit must be brought in its name and at the instance of the Governor.

Now, while a stockholder, who has a proper standing in a Court of Equity in other respects has an undoubted right, to file a bill to restrain the officers of the corporation from executing a contract, or taking any action, to which is *ultra vires* or beyond its corporate powers, I have found no case

208

where this right has been allowed, when directed against the whole manner of business, and when it goes to the extent of practically working a forfeiture of the charter and the dissolution of the corporation.

This would be allowing him to exercise a power which belongs exclusively to the State, and for the exercise of which, in its own name and by its own officers, the State has made ample provision. The plaintiffs in this case have an ample remedy at law, for whatever wrong may have been done them. If the assessments by the company were *ultra vires*, they can receive their contributions by a suit at law. Foreman vs. Hospital, &c., 29 Md.; or if they can show they were induced to take out certificates of membership by fraudulent representations, an action of deceit will lie. With these remedies open to them, I do not think they are entitled to ask the aid of this Court, to accomplish this result, the control over which the State has reserved for its own action, and when they have been themselves active participants and promoters of the very scheme they now wished condemned.

. These views are not at all in conflict with the decisions in Philadelphia and in the New Jersey case referred to. In all these cases, except in the case before Judge Butler (in which, as he says, in the newspaper report of the case, there was no contest and the proceedings were substantially by consent) the suit was in the name of the State for a forefeiture of charter; or else, was a suit by shareholders to restrain the fraudulent misconduct of and misappropriations of money by, the officers of the corporations. As has already been said, there can be no doubt as to the right of a shareholder to maintain a bill for relief against the latter class of offences; but there are no charges of that character in this case. And when the *State* files a bill, *in its own name*, asking relief against this company because of an abuse of its corporate powers, then the other decisions will be in point. For the reasons stated I will sign a decree dismissing the bill, with costs.